Rutland,
January,
1839.

### Town of Mountholly v. Town of Andover.

A marriage celebrated by a justice of the peace, without the consent of the parties, is of no validity to change the settlement of the female.

Such marriage is absolutely void, and it would not seem to be necessary to obtain any decree of nullity or divorce in order to avoid its effect, as between the parties even. Sed quære.

No such decree could be obtained by those not parties to the contract.

This was an appeal from an order of removal, by two justices of the peace, of Abigail Warner and her two children, from the town of Mountholly to the town of Andover. The defendants pleaded that the paupers were unduly removed, which issue was joined to the jury. It was admitted that Pierce Warner had had his last legal settlement in the town of Andover.

The plaintiffs offered in evidence the record of a certificate of marriage of the said Abigal with the said Pierce, on the 5th day of June, 1834, by a justice of the peace of Rutland county, which was read, without objection. It was admitted that the children were born since the date of such marriage.

The defendant town, for the purpose of invalidating such marriage, offered evidence tending to show that such ceremony of marriage was had and celebrated before such justice without the consent of the parties thereto. This testimony was objected to by the plaintiffs, but admitted by the court. The jury were instructed by the court that such marriage would be void in law, if the ceremony was had before the justice without the consent of the parties thereto, but by the constraint and coercion of others. It was admitted that the parties had not cohabited since their marriage. Verdict for defendants, and judgment thereon, to which the plaintiffs excepted.

*Merrill & Ormsbee*, for plaintiffs.

The contract of marriage, while the parties are living, ought not to be impeached by strangers to it.

Though the present case, on paper, may seem to be a strong one, yet, once admit the principle that strangers to the contract may impeach it, and it becomes a principle of such general adaptation, that it is impossible to foresee to what cases it may be applied.

RUTLAND,
January,
1839.

Mountholly
v.
Andover.

When it is attempted on the ground of want of consent of the parties, and while they are living, it should never be done collaterally or without notice to the parties most interested.

If necessary to be done to protect the rights of strangers, the court should require them to cite the parties before the court, that the judgment of the court may be final and conclusive upon the subject matter of it.

*S. Foot*, for defendants.

The justice's record of the marriage is not conclusive, but parol evidence is admissible to disprove it, to show fraud, duress or compulsion. 2 Starkie's Ev. 554-5-6. A record may be impeached by extrinsic evidence. *Dickson* v, *Fisher*, Burr. Rep. 2267.

The jury have found that the parties did not consent to the marriage and that the ceremony was a mere compulsory proceeding, and it is, consequently, void. 3 M. & S. Rep. 259. 2 Stark. Ev. 506.

The opinion of the court was delivered by

REDFIELD, J.—In this case the question of the legality of the marriage of the pauper arises upon the trial of the question of her legal settlement. The case found by the jury is, that the ceremony of marriage was had before the justice, without the consent of the parties. It was a marriage by force and duress. Is such a marriage sufficient to change the settlement of the female?

Such a marriage has always been held void. Marriage is a contract, and requires the *consensus animorum* as much as any other contract. It was considered exclusively a civil contract, throughout all Christendom, until the time of Pope Innocent III. In the tide of usurpation of temporal power by the Bishop of Rome, that of celebrating marriages would not be considered unimportant. That pope accordingly declared it to be exclusively a religious sacrament. In most catholic countries marriage has since that period been regarded as a sacrament, and, as such, to belong to the spiritual courts. In England, too, all matrimonial cases belong exclusively to the ecclesiastical jurisdiction. With us marriage is but a civil contract, required to be celebrated in some public manner before a civil magistrate or minister of

the gospel.    When the relation is once created, it becomes of perpetual obligation, unless dissolved by competent authority.

It is admitted, on all hands, that the mere fact of marriage, without the consent of parties, is of no validity. It is merely and absolutely void. It is the same as the marriage of an idiot or lunatic. 1 Russell on Crimes, 206. 1 Black. Com. 438, 439. 2 Stark. Ev. 937.

In all cases where the marriage is void, and comes in controversy collaterally, between those not parties to the contract, as in the present case, it may be impeached. *Middleborough* v. *Rochester,* 12 Mass. Rep. 363.

But, perhaps, even a void marriage, where the parties to the contract are concerned, would not be allowed to be attacked in this collateral manner. The case of *Wightman* v. *Wightman,* 4 Johns. Ch. Cases, 343, is certainly a highly respectable authority to that effect. Some of the earlier authorities consider the marriage of a lunatic or idiot, even, as binding until dissolved by a decree to that effect. *Manby* v. *Scott,* 1 Lev. Rep. 4, 5. 1 Sid. Rep. 109. Bac. Abr. Baron and Feme, H. 1 Roll. Abr. 357. Judge Reeve and Chancellor Kent seem to consider this the settled rule upon the subject.

I should very much hesitate to differ from so respectable authority, but must say I can see no good foundation for the rule. If the ceremony is a mere form, had without the consent of the parties, it no more constitutes a marriage than if it were had without the knowledge of the parties. And it would be monstrous to suppose, that if a justice of the peace should presume to record the marriage of two parties competent to contract, but without consulting the parties, it would be necessary for them to resort to a decree of divorce, in order to avoid the effect of the record. It is difficult to perceive why a marriage, had without the consent of the parties, should be of any more validity than if one of the parties had, at the time, a former husband or wife living. In the latter case, no decree of divorce is ever required. Indeed, the court

would not pass a decree in such case. We always require evidence of a marriage before we proceed to decree a divorce. The very word divorce, *ex vi termini*, imports a marriage.

At all events, it could not be required that the town of Andover, in order to avoid the effect of the marriage, should institute any proceeding to annul what is, in itself, void. In short, no such proceeding could be instituted by them. A decree of divorce could only be obtained at the suit of the parties to the marriage.

Judgment affirmed.