Hon. ASAHEL PECK,  
Hon. WILLIAM C. WILSON, } Assistant Judges.  
Hon. HOYT H. WHEELER,

---

## N. S. WISER AND HIS WIFE, SARAH A. WISER, *v.* SUMNER LOCKWOOD'S ESTATE.

### *Marriage. Probate Court. Jurisdiction. Reference. Statute.* (*Gen. Sts., ch.* 56, § 1.)

L., while insane, was married to S. and continued insane till his death, leaving S. surviving him. *Held,* that although their marriage could have been avoided by proceedings in the supreme court, it was a marriage in fact and they were husband and wife, and that S. was entitled to a distributive share in the estate of L., who died without issue, as his widow, under section 1 chapter 56 of the General Statutes.

The existence of the marriage, as a fact, having been established, the probate court had no jurisdiction to try its validity, or power to treat it as a nullity.

The reference of this suit conferred no greater jurisdiction upon the referee over the subject matter of the suit than the court itself had; and he could no more try the validity of the marriage than the probate court or the county court.

S., while the widow of L., and a minor, executed a quit claim deed of all her interest in the estate of L. to A., for which she received $100. *Held,* that such deed was voidable, and that her inability and neglect to return the consideration received by her did not affect her right to avoid it.

APPEAL from the decree of the probate court for the district of Windsor denying to Sarah A. Wiser, one of the appellants, and the wife of the other appellant, her claim to a distributive share in the estate of Sumner Lockwood deceased, as the widow of said Lockwood, under section 1 chapter 56 of the General Statutes. The case was referred by the county court by agreement of parties. The referee reported that

" Said Sarah A. Wiser, whose maiden name was Sarah A. Blodgett, was married to said Sumner Lockwood in March, 1863, and immediately went to reside with him at his house. She lived with said Sumner at different times and cohabited with him as his wife but not constantly, and for some considerable time just before his death she had not lived with him. Said Sumner Lockwood, at the time of his said marriage to the said Sarah A. Blodgett, was' not of sound mind, nor did he ever become of sound mind afterwards, and he died in April, 1867, and the referee expressly finds that Sumner Lockwood had not, at the time of said marriage, a sufficient degree of mental capacity to make a marriage contract, nor any other contract, and although at some times he was less violently insane than at others, yet he never after said marriage recovered from his insanity, and ought to have been under guardianship the whole time. When he was about fourteen or fifteen years old this insanity first developed itself, and continued until his death in April, 1867. April 19, 1859, the overseer of the poor petitioned to have a guardian appointed over said Sumner Lockwood, and on May 2, 1859, Elkanah Chandler was duly appointed such guardian, and continued such guardian until said Chandler died, and the overseer of the poor, and friends of said Sumner, made efforts to obtain another guardian but failed to get the necessary bond, and no other guardian was ever appointed, and the decree of lunacy under which such guardian was appointed has never been annulled or vacated, unless the above facts have that effect. Said Sumner Lockwood, at the time of said marriage, was about forty-eight years old, and the said Sarah A. Blodgett was twelve years and about six months old, and there was never any issue from said marriage ; "

And also that said Sarah, after the death of said Sumner and while she was a minor, and before her second marriage, executed to one Augustus Lockwood a quit claim deed of all her interest in the estate of said Sumner, for which she received $100 as consideration therefor. After she became of age she neither affirmed

nor revoked said deed, but prosecuted this suit, claiming her share in said estate, and never offered or had the ability to return the consideration received by her for said deed. The referee submitted to the court to determine upon the foregoing facts whether the said Sarah was entitled to dower as the widow of said Sumner.

The county court at the May term, 1869, BARRETT, J., presiding, upon the report of the referee held and decided that the said Sarah was entitled to a share in the estate of said Sumner under section 1 chapter 56 of the General Statutes, as his widow, and allowed her claim therefor, to which the appellee excepted.

*Luther Adams*, for the appellee.

*John F. Deane* and *S. Fullam*, for the appellants.

The opinion of the court was delivered by

WHEELER, J. At the time the marriage ceremony was performed between Sumner Lockwood and Sarah A. Blodgett, he took part in it so far as he was capable of doing so, and such consent as he could give he did give. The ceremony was gone through with according to the laws of the State, and she became his wife, and he became her husband as fully as he could become the husband of any woman. There was a marriage in fact, followed by cohabitation between them.

This marriage was void in the sense in which the word " void " is sometimes used. It was not binding upon him, and, perhaps, not upon her ; but as to the latter we express no opinion. He, or any relative interested to have it annulled, could have done so, and it would have become void from the beginning, and have been in all things as if the ceremony had never been performed. Nothing was done to annul it, and it remained in as full force at the time of his decease as it ever had been. It remained a marriage in fact, and although void in the sense that it could have been avoided, still it was a marriage, and he and she were in fact husband and wife. * This seems to be the plain import of the provisions of the statutes of this state upon this subject. In cases where there can be no marriage in fact, as where one of the parties has a former husband or wife living, and in incestuous marriages, and others absolutely prohibited by law, it is provided that the mar-

riages shall be absolutely void without any decree of divorce or other legal process; while, as to other marriages void at common law, and among them those where one of the parties was an idiot or lunatic, it is provided that they may be annulled, with no provision that they shall be absolutely void without any such proceeding. We think that this distinction plainly shows that marriages of lunatics and idiots, and other marriages not declared to be absolutely void by the statute, were intended to be valid unless avoided by proper proceedings, although, when so avoided, they would be void from the beginning. Gen. Sts., ch. 70, § § 1, 2, 3.

The provisions of section 8 of the same chapter of the statutes are inconsistent with the idea that the marriage of a lunatic is absolutely void; for it cannot be annulled if he chooses to treat it as valid after he is restored to reason, and if it were absolutely void, nothing short of another ceremony could make it good.

This construction of the provisions of the statutes is in harmony with the common law upon this subject. Bac. Ab., Idiots and Lunatics, D ; *Smart* v. *Taylor*, 9 Mod., 98; *Ex parte Turing*, 1 Ves. & B., 140 ; *Wightman* v. *Wightman*, 4 Johns. ch. 343.

When he died she survived him, and as she had been in fact his wife in life, upon his decease she became in fact his widow.

In section 1, chapter 55 of the General Statutes, it is provided that the widow of every deceased person shall be entitled to dower, etc., and in section 1 chapter 56 it is provided that the widow of any person deceased, leaving no issue, shall be entitled to the whole of his estate if it do not exceed one thousand dollars, and to one thousand dollars and half the residue if it exceeds that amount. It is not and could not successfully be questioned but that a widow, who would be entitled to dower in case her husband left issue, would be entitled to her distributive share under section 1 of chapter 56 if he left no issue. As under the statute of wills the rules of the common law are resorted to to determine what is a sound mind to the making of a will, so under the first sections of chapters 55 and 56 the rules of the same law may be resorted to to determine who are widows entitled to share as such in the estates of their husband. By the common law such a widow, as

Sarah A. Lockwood was, was entitled to dower. In Bac. Ab., Idiots and Lunatics, D., it is said "If an idiot or lunatic marry and die, his widow shall be endowed."

At common law a woman was dowable at nine years of age, yet she could not consent or disagree to marriage till twelve, and a marriage entered into by her before twelve. was void or valid at her election at that age. Littleton, § 36.

Lord COKE, in commenting upon this section of Littleton, says: "Here Littleton speaketh of a wife generally, and generally it is to be understood as well of a wife *de facto* as *de jure*. Wherein it is to be observed, that albeit *consensus non concubitus facit matrimonium*, and that a woman cannot consent before twelve or a man before fourteen, yet this inchoate and imperfect marriage, from which either of the parties of the age of consent may disagree, after the death of the husband shall give dower to the wife; and therefore it is accounted in law, after the death of the husband *legitimum matrimonium*, a lawful marriage *quoad dotem*. So it is if a marriage *de facto* be avoidable by divorce in respect of consanguinity, affinity, pre-contract or such like, whereby the marriage might have been dissolved and the parties freed *a vinculo matrimonii*, yet if the husband die before any divorce, then, for that it cannot now be avoided, this wife *de facto* shall be endowed; for this is *legitimum matrimonium quoad dotem*. The wife of an idiot, *non compos mentis*, outlawed, or attainted of felony or trespass, attainted of heresy, *præmunire* or the like, shall be endowed." Co. Litt., 33 a.

A widow of a marriage void because not within the Levitical degrees, but not annulled, was dowable. Reeves' Dom. Rel., 55.

Upon these principles the probate court should have assigned to this widow her share in the estate of her husband under section 1 chapter 56 of the General Statutes, unless that court had jurisdiction to try the validity of their marriage and to declare it void.

There is no doubt that probate courts, and all others of general or even limited jurisdiction, may try and determine questions involving the existence of a marriage in fact; as in cases where a witness is offered and objected to on the ground that she is the wife of a party to the proceeding, the court before which the trial

is going on must of necessity try and determine whether in fact the witness is such a wife; so if a woman claims dower in an estate, the probate court having jurisdiction of its settlement may try and determine the question whether there has ever been any marriage at all between her and the intestate, or testator, or not. This decision is not contrary to that made in *Mt. Holly* v. *Andover*, 11 Vt., 226. There the question was whether there had been a marriage in fact or not; whether persons fully capable of entering into the marriage contract had in fact done so, and not whether persons who had entered into a marriage were or were not capable of doing so. A justice had made a record of a marriage, but that did not make a marriage; it only made some evidence of one.

The statement of WOODBURY, J., 2 N. H., 465, that a plea of no marriage could not be joined with a plea of no seizin in cases of dower, because the former must have been tried by the bishop and the latter by a common law court, to which we have been referred, sustains this distinction. The bishop had jurisdiction to try the validity of marriages. 1 Black Com., 335. In Burns' Eccl. Law it is laid down that the lawfulness of a marriage in cases of dower is to be tried by the bishop's certificate, but " whether a marriage was contracted betwixt the parties or not, or whether the parties lived in a married estate, where the legality of it doth not come in question," is triable by jury. Title Marriage, X.

The trial of the validity of marriages has never been given to the probate courts in this state, and we think that the probate court, having jurisdiction of the settlement of the estate of Sumner Lockwood, had no power to treat this marriage as a nullity, when its existence, as a fact, had been established.

When the county court referred this suit to the referee, the reference conferred no greater jurisdiction upon him over the subject matter of the suit than the court itself had; and he could no more try the validity of the marriage than the probate court or the county court could. The cases, to which we have been referred on this subject, are cases where the jurisdiction depended upon the manner of commencing or proceeding with the suits, and

not upon the question whether the court had or could have any jurisdiction over the subject matter involved in the suits, or not. Further, the referee has not assumed to decide whether this widow is entitled to dower or not, but has found and stated the facts and submitted the question to the court; so the county court was, and this court is, wholly unembarrassed by any decision of the referee as a tribunal selected by the parties.

The deed of this widow, surrendering her right of dower to Augustus Lockwood, an heir, was while she was within age and voidable by her. Reeves' Dom. Rel., 250, 251.

Her inability and neglect to return the consideration received by her did not affect her right to avoid it. Reeves' Dom. Rel., 243, 244.

The judgment of the county court is affirmed, and this judgment is to be certified to the probate court.