ALBERT LOUIS KUEHMSTED, *Appellant*, vs. JAMES D. TURN-
WALL, INGA B. YOUNG, and her husband, N. H. YOUNG,
MYRTLE FELSENTHAL, and ALMER B. TURNWALL, *Appel-
lees.*

138 So. 775.

En Banc.

Opinion filed January 11, 1932.

*Wilson & Bogue, Loftin, Stokes,* and *Calkins,* and *Robert H. Anderson,* for Appellant;

*Austin L. Richardson,* for Appellees.

TERRELL, J.—This is a suit in equity to annul a marriage for want of mental capacity on the part of the wife to enter the marital state. The Bill of Complaint was exhibited in the circuit court of Pinellas County, alleging in substance that Appellees were:

"the brother, sister, niece and nephew and only heirs at law of Julia B. Kuehmsted, deceased, with whom the defendant, Albert Louis Kuehmsted, entered into a pretended marriage on October 19, 1923, and who died October 28, 1928, that at the time of the marriage, the deceased was of unsound mind and memory, insane and wholly incompetent and unable to understand or realize the marriage contract which was entered into willfully, fraudulently and maliciously by Albert Louis Kuehmsted with knowledge of the deceased's insanity and to defeat and defraud the complainants of their legal inheritance in her estate; that the deceased never recovered her mental capacity after the marriage ceremony "but her insanity continued without a lucid interval from the time of the ceremony until the time of her death, and that the marriage was totally void and of no effect; that a will was filed in the office of the county judge which was purported to have been made by the deceased on the date of the marriage, by its terms leaving the major portion of her estate to the defendant and that the complainants had filed a petition in the county judge's court of Pinellas County to revoke the probate of said will. The bill prayed that the marriage be decreed to be totally null and void and of no effect."

A demurrer challenging the equity of the bill was overruled whereupon answer was filed denying the charge of

fraud against him and denying that Julia B. Kuehmsted was of unsound mind or insane or incompetent at the time of the marriage and asserting that on the contrary, she was mentally competent and understood and realized the marriage ceremony and the validity of the marriage. On the issues thus made, testimony was taken and a final decree was entered finding the material allegations of the bill to be true and adjudicating the marriage to be null and void. From this decree the defendant appealed.

The basal question brought here for our determination may be stated as follows: Can a marriage alleged to be void for want of mental capacity be annulled by a court of equity after the death of one of the spouses and may the heirs at law of the dead spouse maintain a bill in equity for that purpose?

The Appellant declares for the negative of this issue and contends that while either party to an invalid marriage may maintain a cause of action for its annulment at any time no such right is recognized in any third person except where provided for in specific cases. To support his position the following authorities are relied on: Ridgley vs. Ridgley, 79 Md. 298, 29 Atl. Rep. 597, 25 L. R. A. 800, In re. Hollopeter, 52 Wash. 41, 100 Pac. Rep. 159, 132 Am. St. Rep. 952, Sawyer vs. Slack, 196 N. C. 697, 146 S. E. Rep. 864, Henderson vs. Ressor, 265 Mo. 718, S. W. Rep. 175, Niland vs. Niland, 96 N. J. Eq. 438, 126 Atl. 530, 18 R. C. L. 447, 32 C. J. 730 and 38 C. J. 1353.

We have examined all these authorities and do not think they are decisive of the case at bar. True, some of them hold that third parties cannot bring a suit to annul a marriage, that such suits can be brought only at the instance of one of the spouses but they all turn on statutes peculiar to the jurisdiction or else they were suits brought by parents to annul the marriage of a child because of incapacity by reason of tender years or other disability to

contract the marital state, such marriages being generally held to be voidable only and not void. The rule seems to be general that voidable marriages may be subsequently ratified by the contracting parties.

Speaking technically, there is a vast difference between a decree annulling, and a decree dissolving a marriage by divorce. The one being grounded on the fact that there was never a valid marriage while the other concedes that a valid marriage in fact exists but dissolves it. Ridgley vs. Ridgley supra, In re. Hollopeter, supra.

At the common law, the canonical disabilities of consanguinities, affinity and impotence rendered the marriage voidable and not void while insanity rendered it absolutely void. The voidable marriage is good for every purpose until avoided, it can be attacked only on a direct proceeding during the life of the parties, the parties cannot marry again, unless divorced, their children are legitimate, the survivor is entitled to the rights of husband or wife, the wife is entitled to dower, and on the death of either party it, the marriage is good ab initio. 18 R. C. L. 447. This common law rule not having been modified by statute is in force in this state, and while it has been said in some jurisdictions that the marriage of an insane person is an absolute nullity and no judgment or decree of nullity is necessary to restore the parties to their original rights, yet we approve the rule that the fitness and propriety of a judicial decision pronouncing the nullity of such a marriage is very apparent, and is equally conducive to good order and decorum and to the peace and conscience of the party. Wightman vs. Wightman, 4 Johns Ch. (N. Y.) 343, Rowdan vs. Rowdan, 28 Ala. 565, Powell vs. Powell, 18 Kan. 371, 26 Am. Rep. 774.

In Kent's Commentaries Vol. 2, 76, it is said that though marriage with an idiot or lunatic be absolutely void, and no sentence or voidance be absolutely necessary, yet, as

well for the sake of the good order of society, as for the peace of mind of all persons concerned, it is expedient that the nullity of the marriage should be ascertained and declared by the decree of a court of competent jurisdiction.

In Orchardson vs. Cofield et al., 171 Ill. 14, it was held that the marriage of an insane person was void, and not being good for any legal purpose, its invalidity may be shown in any court, between any parties either during the lifetime of the parties to such marriage or after their death. Bell vs. Bennett, 73 Ga. 784, Medlock vs. Merritt, 102 Ga. 212, 29 S. E. Rep. 185.

In some jurisdictions, the marriage of persons insane is by statute treated as voidable only and they can be annulled only by a decree in chancery which must be accomplished by one of the spouses but the better rule supported by the weight of authority is aptly stated in 18 R. C. L. 446 as follows:

"Under ordinary circumstances the effect of a void marriage so far as concerns the conferring of legal rights upon the parties, is as though no marriage had ever taken place, and therefore being good for no legal purpose, its invalidity can be maintained in any proceeding in which the fact of marriage may be material either direct or collaterally in any civil court between any parties at any time, whether before or after the death of either or both the husband and wife, and upon mere proof of the facts rendering such marriage void, it will be disregarded or treated as non-existent by the court."

Gatheings vs. Williams, 27 N. C. (5 Ired L.) 487, 44 Am. Dec. 49, Note to Deeds vs. Strode, 96 A. S. R. 267, Holbrook vs. State, 34 Ark. 511, *In re* Gregorson's Estate 160 Cal. 21, 116 Pac. Rep. 60, Jenkins vs. Jenkins, 2 Dana (Ky.) 102, Fearnow vs. Jones, 34 Okla. 694, 126 Pac. Rep. 1015, Moutholly vs. Andover, 11 Vt. 226, 34 Am. Dec. 685, Orchardson vs. Cofield, supra, Bell vs. Bennett, 73

Ga. 784, Medlock v. Merritt, 102 Ga. 212, Gartright vs. McGowan, supra, Ward vs. Dulaney, 23 Miss. 410, Middleborough vs. Rochester, 12 Mass. 363, Unity vs. Belgrade, 76 Me. 419, Waymire vs. Jetmore, 22 Ohio St. 271.

Now let use see if the record in this case discloses facts evidencing Mrs. Kuehmsted's lack of mental capacity to enter into the marriage brought in question. It is revealed that Mr. and Mrs. Kuehmsted were first married in 1901 and lived together until 1925 when they were divorced at the instance of the latter, that they remained separated until October 1928, the former living in Chicago and the latter in St. Petersburg, Florida, when Mrs. Kuehmsted became very ill; that Mr. Kuehmsted was without her knowledge advised of her illness by wire and left for St. Petersburg at once, arriving there late October 17, when they were married October 19, Mr. Kuehmsted was notified of Mrs. Kuehmsted's condition and went to St. Petersburg without her knowledge or consent. It is shown that at the time of the marriage Mrs. Kuehmsted was sixty-four years old and was possessed of a considerable estate, that she had suffered from diabetes for many years, that at the time of the marriage she was in a diabetic coma which continued without interruption to the time of her death on October 28, 1928, that she was not in her right mind for days before the marriage, that in addition to being in the last stage of diabetes at the time of the marriage, one arm was by reason of thrombosis paralyzed to the shoulder and was in a gangrenous condition from fingers to elbow, that she was also suffering from a carbuncle on her back that measured ten inches one way and eight the other, which was discharging pus from several openings and that her body and limbs were covered with boils and blisters resulting from her diabetic condition.

The evidence of these facts except as to Mrs. Kuehmsted's mental condition were uncontradicted. As to her

mental condition, the evidence was in conflict but the decree below was amply justified. It was supported by the testimony of the nurses who were her friends of many years' standing, the testimony of the attending physicians, and others who were in positions to know. Under our social order the marital relation is supported on the fact of solace, comfort, companionship, being a helpmate and raising a family. Under the facts presented here there was no basis whatever for the marital relation in this case.

We therefore conclude that the marriage brought in question was void ab initio, that it was as if no marriage had taken place, that appellees had a right to maintain this cause, and that the marriage being void the appellant acquired no interest whatever in the property of Mrs. Kuehmsted by virtue of said marriage. Deeds vs. Stronde, supra, and cases cited.

Affirmed.

BUFORD, C.J., AND WHITFIELD, ELLIS, BROWN AND DAVIS, J.J., concur.