**CHARLES B. SAVAGE v. JOHN W. OLSON, et al.**

9 So. (2nd) 363                                    Division B
July 28, 1942

Mitchell D. Price, Zaring, Florence & Kirchik and Estil H. Lanham, for appellant.

Redfearn & Ferrell, and J. Malcolm Johnson, Jr., for appellees.

THOMAS, J.:

The suit in the chancery court was brought by "all of the surviving blood relatives and heirs at law of . . . Hannah Ford (Savage) deceased," against Charles B. Savage, seeking the annulment of a marriage between the deceased and the defendant and the restraint of the latter from claiming any interest in, and from exercising any dominion over, certain property which it is not necessary to describe.

In the bill of complaint and its amendments the allegations relied upon to support the prayer for re-

lief depicted an affair sordid in the extreme. The deceased and the defendant were married in Broward County 5 February 1941 by a notary public. At the time he was forty-six years of age and she, sixty-four. The relationship was short-lived and ended when a car in which they were traveling entered a canal 1 April 1941. She died; he emerged unscathed.

Hannah Savage owned property worth approximately $75,000.

Some time before the marriage she had suffered a concussion of the brain in an automobile accident and for several months thereafter was non compos mentis. Later, to relieve her suffering, it was necessary to perform an operation, but this did not accomplish complete recovery and she continued to have acute headaches, was "mentally defective" and lacked her normal faculties.

Shortly before their marriage the defendant began to show an unusual interest in Hannah Ford and her affairs despite the disparity in their ages and her condition of health. After a period during which he was inordinately ingratiating he proposed marriage which was performed but not consummated. He continued living apart from her after the ceremony, posed as a single person and executed mortgages, of which she was ignorant, on property belonging to her.

He had a long criminal record.

He "lived and cohabited" with another woman during his courtship and that relationship continued after the wedding. Hannah Ford, now Savage, was buried the day after she died and the day following her funeral her husband applied for letters of administration. About a year before her demise she had

executed a will devising all her property to her relatives and this instrument was placed in a "lock box" at a bank. The third day after her death appellant removed all of the contents of the safe-deposit box and discontinued the use of it.

In substance the marriage was challenged on the grounds that when performed the husband was married to another, and the wife was incapable of contracting.

In presenting the first of these propositions the appellant has raised many intriguing questions of law, among them the presumption of the validity of a subsequent marriage as against a prior one of the same person, the burden of the plaintiffs to prove that the husband (Charles B. Savage) did not obtain a divorce, and their responsibility to establish by evidence that his first wife (Genia W. Savage) was living at the time of the marriage under attack. In our path, however, to a solution of these problems there is an obstacle which we consider insurmountable, namely, the absence of Genia W. Savage as a party to this suit. It is patent that any judgment in the circuit court or opinion here holding void the divorce of Genia W. Savage from Charles B. Savage would materially affect her rights. It would be unjust and inequitable, therefore, to hold that the bonds of matrimony existing between those parties had not been properly severed without giving her the opportunity to resist the assailment of the decree. Richardson, et al., v. King, 135 N.W. 640, 645. There is a dearth of authority on the subject of necessary parties to a suit collaterally assaulting a judgment due, probably, to the impracticability of establishing a definite rule to fit all cases. 39 Am. Jur. Parties, page 903.

It is generally agreed that those persons must be joined who are materially interested in the suit. Oakland Prop. Corp. v. Hogan, et .al., 96 Fla. 40, 117 So. 846; Richardson v. King, supra. It is our view that Genia W. Savage is an indispensable party to any adjudication of the validity or invalidity of the decree in the suit between her and Charles B. Savage so we will not, therefore, discuss the procedure and practice followed there, but will determine the instant controversy on the other features set out in the bill, namely, the alleged incapacity of Hannah Savage and the fraud charged to Charles B. Savage.

To do this it is necessary to consider the background and history of the courtship of Charles B. Savage, his behavior during that time and continuing after her death, and the mental condition of Hannah Savage. There was such disparity in the ages of these parties as to discredit the idea that he held any real love for her. Unquestionably he had lavished attention upon her from motives which the passage of time proved ulterior, if not sinister. Savage himself swore that the marriage was never consummated, a circumstance which he attributed to absence of desire on his part. For some time before the marriage he occupied a garage apartment on her premises, in the rear of her home, and after the marriage this situation was unchanged. The husband was in intimate associate of another woman during the courtship, —this companionship extended beyond the date of the marriage, and this woman was one of the persons through whom certain conveyances of Hannah Ford's property were made, admittedly without consideration, by Hannah Ford (Savage) to the appellant immediately prior to the wedding.

After the marriage he warned his bride not to divulge that it had been solemnized and represented to others that he was still single even to the extent of describing himself in mortgages as an unmarried person. It is significant that the encumbered property was conveyed by her indirectly to him before they were married and the mortgages were placed on it between the wedding day and the time of her death. In circumstances that, to put it mildly, were unusual Hannah Savage was his bride fewer than sixty days and life ended for her when the car, driven by Savage, in which she was a passenger plunged into a canal. He escaped unhurt and when talking to officers and the funeral director at the scene referred to her as a friend. That night, after the body had been taken to the funeral home and he had had the opportunity of consulting his attorney, he admitted that the deceased was his wife of a few weeks. So much for the courtship and marriage of Charles B. Savage.

Little time was lost in interring the remains of the unfortunate woman. The funeral had been held before her relatives learned that she had died. Charles B. Savage became the administrator of her estate the second day after her death and immediately, emptied her safe-deposit box.

We proceed to a brief analysis of the testimony reflecting the mental, and incidentally the physical, condition of Hannah Ford Savage. As alleged in the bill of complaint she had been injured in an automobile accident, receiving a severe concussion from which she did not and, according to the testimony of some of the physicians, could not recover. At intervals she was depressed and suffered melancholia. It was said by the expert witnesses, that she lacked

the ability to concentrate and that her mental grasp and capacity were definitely curtailed. She complained continuously of headaches, was emotionally unstable, and frequently shed copious tears. One of the physicians who treated her stated that her condition did not improve in any degree between the years 1938 and 1940. It appears further in the testimony that she was not capable of managing her business affairs or of executing legal instruments; also, that her judgment was unsound. There was expert testimony that she was conscious of the marriage ceremony but that she could not comprehend the implications of it. One physician stated under oath that she couldn't exercise rational judgment concerning a subject so serious as marriage. In her mental state she was tractable and her emotions were so easily unsettled that she would weep one moment and laugh the next.

It is true that much of the testimony was in conflict, but it was abundantly shown that the mental condition of Hannah Ford, although she could not be said to be actually insane, made her easy prey to the machinations of Charles B. Savage. Examining together her plight and his artful practices we think the chancellor was fully justified in the decision he rendered declaring the marriage void. See 35 Am. Jur., Marriage, page 239. The testimony which he elected to give credit fully substantiated the allegations of the bill of complaint anent fraud of one and incapacity of the other.

There can be no doubt of the right of the appellees to prosecute the suit as will be seen from an examination of our opinion in Kuehmsted v. Turnwall, et al., 103 Fla. 1180, 138 So. 775, and a study of the record

in this case has led us to the conviction that they were entitled to the relief they sought.

Affirmed.

BROWN, C. J., TERRELL, and CHAPMAN, JJ., concur.