In the Matter of the Estate of JOSEPH A. HANEY, Deceased. REGINA K. HANEY, Appellant-Respondent; ROSE PATANZO, as Executrix of JOSEPH A. HANEY, Deceased, et al., Respondents-Appellants.

Fourth Department, June 30, 1961.

*Desmond & Drury* (*James P. McNamara* and *Edward J. Desmond* of counsel), for appellant-respondent.

*James D. Hurley* for Rose Patanzo, respondent-appellant.

*Louis F. Haney,* respondent-appellant in person.

HALPERN, J. This case raises a novel question as to the survival of a cause of action for annulment. The decedent Joseph A. Haney married Regina Haney on August 9, 1958. He commenced an action for an annulment on the ground of fraud on November 28, 1958. The defendant wife defaulted and, after a hearing at which proof was taken, an interlocutory decree of annulment was granted on January 27, 1959. The decree was to become final under section 1176 of the Civil Practice Act, on April 27, 1959. Twelve days before that date, on April 15, 1959, the decedent died.

The decedent left a will in which he made no provision for his wife. After the admission of the will to probate, Mrs. Haney filed a notice of election on November 5, 1959, electing to take against the will under section 18 of the Decedent Estate Law. The executrix of the estate, who was also a sister of the decedent, petitioned for a determination of the validity of the notice of election, asserting that it was invalid upon two grounds: (1) that Mrs. Haney was not the widow of decedent at the time of filing the notice of election because the marriage had been effectively annulled by the annulment decree, and (2) that Mrs. Haney has abandoned the decedent during his lifetime and therefore was barred from electing to take against his will by subdivision 5 of section 18 of the Decedent Estate Law.

Upon a trial of the issues before the Surrogate and a jury, the Surrogate determined as a matter of law that the marriage

had not been effectively annulled because the annulment action had abated upon the decedent's death but the Surrogate held that the claim of abandonment raised an issue of fact which required submission to the jury. The jury decided that issue in favor of the executrix and the Surrogate accordingly entered a decree adjudging that the notice of election was invalid and that Mrs. Haney had no right to take against the will.

We are of the opinion that the Surrogate's decision on the first question was erroneous and that he should have held as a matter of law that the marriage had been effectively annulled.

It is true that at common law, all matrimonial actions abated upon the death of either party but the statutes of this State have created certain exceptions to the common-law principle. Under section 1139 of the Civil Practice Act, an action to annul a marriage on the ground that the consent of one of the parties was obtained by fraud may be maintained, after the death of the party whose consent was so obtained, '' by any relative of that party who has an interest to avoid the marriage '', during the lifetime of the other party. It is thus apparent that a cause of action to annul a marriage upon the ground of fraud survives the death of the defrauded spouse. It may be enforced by any relative '' who has an interest '' in the matter. There are many sections of the Civil Practice Act in which it is recognized that a cause of action for annulment may survive. See section 1146 of the Civil Practice Act, referring to the entry of a judgment of annulment after the death of a party, section 1169 of the Civil Practice Act, providing for the payment of the expenses of the wife when an action for annulment is maintained after the death of the husband, section 1171-b of the Civil Practice Act, referring to the enforcement of an order for payment of expenses when an action for annulment is maintained after the death of the husband, subdivision 9 of section 49 of the Civil Practice Act, dealing with the Statute of Limitations when the action is maintained by some one other than the party defrauded.

Section 82 of the Civil Practice Act provides that '' An action does not abate by any event if the cause of action survives or continues ''. Since the cause of action for annulment on the ground of fraud survived the death of the plaintiff, under the provisions of section 1139, the pending action did not abate upon his death. If his death had occurred prior to the entry of interlocutory judgment, it would have been necessary to substitute an interested relative, as the successor to the original plaintiff (Civ. Prac. Act, § 84) but, since an interlocutory judgment had been entered prior to his death, there was no need to substitute anyone. Section 478 of the Civil Practice Act provides that '' If

either party to an action dies after   \*   \*   \*   an interlocutory judgment, but before final judgment is entered, the court must enter final judgment in the names of the original parties unless \*   \*   \*   the interlocutory judgment, is set aside ''. The interlocutory judgment in this case automatically became a final judgment as of course three months after its entry, in the absence of any action by the court otherwise ordering in the meantime (Civ. Prac. Act, § 1176).

The only novel point in the foregoing syllogism is the interpretation of section 1139 as allowing the continuance of a pending action for an annulment on the ground of fraud after the death of the defrauded spouse instead of requiring the institution of a new action by an interested relative. We think that this is well within the provision of section 82 of the Civil Practice Act that " [a]n action does not abate   \*   \*   \*   if the cause of action survives ''. It is true that section 1139 does not explicitly provide that the defrauded spouse's cause of action for annulment survives but it does provide that a relative may maintain the action after the spouse's death and this necessarily requires a holding that the cause of action survived; otherwise the relative would not have any basis for his action. The statute does not create a new cause of action in favor of the relative for injury to his property interests resulting from the fraudulently induced marriage; it gives him the right to enforce the defrauded spouse's original cause of action for annulment. The statute thus evidences a clear legislative policy in favor of the survival of the cause of action, which overrides the common-law rule to the contrary. In this situation, it would be contrary to the liberal nonabatement policy expressed in section 82 to declare the pending action abated and to require the institution of a new action to accomplish the same result.

Section 1139 of the Civil Practice Act was derived, without change, from section 1750 of the Code of Civil Procedure which was in turn a revision of section 30 of article second, title I, chapter VIII, part II, of the Revised Statutes of 1829 (2 Rev. Stat. of N. Y. 143). The Report of the Revisers states that '' The whole of the article [article second dealing with ' divorces on the ground of the nullity of the marriage contract'] is new '' (3 Revisers' Report, note at head of Article Second [1827]). The Revisers' Notes state that '' Bills to avoid a marriage \*   \*   \*   may be brought   \*   \*   \*   after the death of a party, by any relative interested, to contest the marriage '' (Notes on Rev. Stat. [1830], p. 90).

It will be noted that section 1139 of the Civil Practice Act provides only for the survival of the cause of action upon the

death of the spouse whose consent was obtained by fraud. It does not provide for the survival of the cause of action upon the death of the spouse charged with perpetrating the fraud. The reasoning back of this distinction is self-evident. If the perpetrator of the fraud died first, there would be no opportunity for him to share in the estate of the person whom he had fraudulently induced to marry him. There was, therefore, no need to provide for the survival of the cause of action for annulment upon his death. On the other hand, under the common-law rule, if the defrauded spouse died first, the perpetrator of the fraud would share in the estate, if an annulment action had not been instituted and carried to completion prior to the death of the defrauded spouse. In order to avert this result, the statute provided for the survival of the cause of action upon the death of the defrauded spouse. The spouse who had perpetrated the fraud was thus prevented from benefiting by his fraud.

The Surrogate, in reaching his decision on this point, placed great reliance upon the case of *Grotsch* v. *Hassey* (133 Misc. 373) but the reliance was misplaced. The *Grotsch* case dealt with an annulment action of the type to which section 1139 does not apply. In the *Grotsch* case, it was the defendant in the annulment action, the spouse charged with having perpetrated the fraud, who died after the entry of the interlocutory judgment and before the entry of final judgment. Applying the common-law rule, the court held that the action abated upon the defendant's death. Section 1139 did not touch the case because, as has been noted, that section provides only for the survival of the cause of action upon the death of the plaintiff, the person whose consent was obtained by fraud. In our case, it was the plaintiff who died before the judgment became final and section 1139 saved the action.

The case of *Matter of Crandall* (196 N. Y. 127) was also relied upon by the Surrogate but that case dealt with a divorce action and merely applied the settled common-law principle that an action for divorce abates upon the death of either party. There is no provision in the Civil Practice Act with respect to divorce parallel to section 1139 with respect to an annulment action for fraud, providing for the survival of the cause of action upon the death of the wronged party (cf. with the *Crandall* case, *Cornell* v. *Cornell*, 7 N Y 2d 164).

In two cases in other States, arising under statutes which are somewhat different from New York's but which express a similar legislative policy, it has been held that, upon the death of the plaintiff in an annulment action, the action may be con-

tinued by his executor or administrator (*Fourth Nat. Bank* v. *Diver*, 131 Kan. 113, Ann. 70 A. L. R. 964; *Barth's Administrator* v. *Barth*, 102 Ky. 56; see, also, 1 Am. Jur., Abatement and Revival, § 111, p. 83).

Our conclusion that, under section 1139 of the Civil Practice Act, the annulment action survived the death of the plaintiff plainly serves the ends of justice in this case. And we cannot conceive of any case in which a similar conclusion would produce an unjust result. The defendant in the annulment action had a full opportunity to defend, if she had wished to do so, and she elected to default. An interlocutory judgment disposing of all the issues was entered prior to the plaintiff's death. The three-month period provided by section 1176 of the Civil Practice Act before an interlocutory judgment becomes final is designed primarily to enable the court to determine whether there had been any collusion or fraud or imposition upon the court (*Matter of Crandall*, 196 N. Y. 127, 131–132, *supra*; *Johnson* v. *Johnson*, 198 Misc. 691, affd. 277 App. Div. 1143). The death of the plaintiff during the three-month period had no effect upon the court's power to investigate into these matters. Neither did it have the effect of cutting short the time within which the defaulting defendant could attack the interlocutory judgment. The defendant could have moved to set aside the judgment, after the plaintiff's death, during the remainder of the three-month period, by motion or order to show cause, on notice to the executor or distributees of the plaintiff's estate (*Angelo* v. *Angelo*, 283 App. Div. 588). The defendant took no steps to attack the interlocutory judgment and the court found no reason to set it aside on its own motion and the judgment became final as of course pursuant to the statute.

We therefore conclude that the marriage had been effectively annulled by a final judgment of annulment. The decree of the Surrogate holding to the contrary should be reversed.

If the Surrogate had arrived at the conclusion which we have reached, he would have found it unnecessary to take up the contention of the executrix that Mrs. Haney had abandoned the decedent during his lifetime. However, since that issue was reached by the Surrogate and a jury trial was held thereon, we shall express our views with respect to it, in order to expedite the final disposition of the case.

There was ample evidence to sustain the finding by the jury that the decedent had been abandoned by his wife and, if only factual questions were involved, we would have no hesitancy in affirming the decree entered on the jury's finding. However, a question has been raised upon appeal as to whether the Sur-

rogate had committed prejudicial error in admitting into evidence upon the trial of the abandonment issue, part of the testimony of the decedent upon the hearing in the annulment action, bearing upon the question of abandonment. We believe that the testimony was properly admitted as testimony given in a prior action, dealing with the same subject matter, by a person since deceased, under section 348 of the Civil Practice Act (*Matter of White,* 2 N Y 2d 309, 315–317; *Healy* v. *Rennert,* 9 N Y 2d 202). In any event, we are of the opinion that, if there was error in admitting the testimony, the error was not prejudicial in view of the proof of abandonment by the testimony of other witnesses. The Surrogate's decree insofar as it adjudged that the decedent had been abandoned by his wife should be affirmed.

Upon both grounds (proof of an effective annulment and proof of abandonment), it should therefore be held that Mrs. Haney is not entitled to take against the decedent's will.

All concur. Present — WILLIAMS, P. J., GOLDMAN, HALPERN, McCLUSKY and HENRY, JJ.

Upon the executor's appeal, decree of the Surrogate, insofar as it adjudges that Regina Haney was and is the widow of the decedent within the meaning of section 18 of the Decedent Estate Law, unanimously reversed and order entered adjudging that the marriage was effectively annulled. Upon the appeal of Regina Haney, decree of the Surrogate, insofar as it adjudges that said Regina Haney abandoned the decedent in his lifetime, affirmed. Decree of the Surrogate that the said Regina Haney is not entitled to take against the decedent's will affirmed. Certain findings of fact and conclusions of law reversed and new findings and conclusions made.