LAWSON, J.,
specially concurring.
I fully agree with- the majority opinion and write to address the dissent. Obviously, this .is a difficult case. Both the dissent and the- majority strive to apply the plain language of this statute, but-read the statute differently. I believe the majority’s reading to be correct because it gives effect to all words in the statute, without adding to them. While the dissent’s reading gives effect to the “right to marry” language, it does so at the expense of the “subject to” language. The majority gives effect to both. In other words, the majority more faithfully construes the text “reasonably, to contain all that it fairly means.” Antonin Scalia, A Matter of Interpretation: Federal Courts and the Law, 23 (Amy Gutmann ed., 1997) (emphasis added).
*752 Saying that something “is subject to court approval” suggests authorization for ratification and does not demand prior approval, as the dissent would require. In essence, the dissent infers from the “right to marry” language that the statute really means “subject to” prior “court approval.” Before adding a word to a statute that the Legislature did not, I would resort to the following secondary rule of construction: “Where reasonable differences arise as to the meaning or application of a statute, the legislative intent must be the polestar of judicial construction.” Lowry v. Parole & Prob. Comm’n, 473 So.2d 1248, 1249 (Fla. 1985) (citing Tampa-Hillsborough Cty. Expressway Auth. v. K.E. Morris Alignment Serv., Inc., 444 So.2d 926 (Fla. 1983)).
This statute is clearly intended to protect the ward from exploitation while preserving, as best as possible, the ward’s fundamental ■ right to marry. These twin goals cannot be met using our common law construct under which a marriage is classified, if not fully valid, as either voidable or void.
This case illustrates why the Legislature’s intent would be thwarted by reading the statute to mean that a marriage is void if entered without prior approval. Here, the ward’s committed supportive relationship pre-dated his injury by a number of years—and, the couple was engaged to be married at the time of the injury. The guardian, for reasons not clear on this record, refused to petition the court for approval of the marriage. It also appears from this record that both before and after the marriage, Glenda Martinez Smith supported and cared for Alan Smith, enhancing his quality of life consistent with the ideals of marriage. In short, it appears from this limited record that the relationship was in no way exploitative, was in the ward’s best interest, and was the ward’s choice. If these inferences are proven at a hearing, it would be contrary to the purpose of this statute to treat the marriage as void, with no opportunity for ratification.
It is also easy to see why the Legislature’s intent would be thwarted by reading the statute to mean that a marriage entered by a ward without prior court approval is voidable. A “voidable” marriage, at common law, cannot be challenged after the death of a spouse. Kuehmsted v. Turnwall, 103 Fla. 1180, 138 So. 775, 777 (1932) (citing 18 R. C. L. 447). If the Legislature had chosen to make a ward’s marriage voidable, a ward could be coerced or manipulated into an exploitative marriage, potentially leaving the ward’s children or other relatives with no recourse if they do not discover the marriage until after the ward’s death.
Because the Legislature’s intent would have been thwarted by employing either common law category (of void or voidable marriages), I find it unsurprising that the Legislature chose to avoid them. I do find it perplexing, however, that the dissent seems to criticize the majority for “avoid[ing] ... the categories of void and voidable marriages” when it was the Legislature that chose not to use them. Dissenting op. at 753. I also take issue with the dissent’s critique of the majority opinion as “strictly construing the term ‘subject’ to mean less than it fairly means in this context but leniently construing the term ‘the right to marry to gloss over the difference in meaning with the term ‘marriage.’ ” Dissenting op. at 753-54. Contrary to this assertion, the majority properly recognizes that by using the phrase “right to marry” the Legislature has foreclosed viewing the marriage as voidable because the marriage itself cannot be validated until the “right to marry” has been approved. Majority op. at 748-49. Then, the majority reasonably reads “subject to” as allowing for approval before or after the marriage. *753 Majority op. at 748^9. That is not a “strict construction,” as the dissent contends, but is a reasonable reading—and the only reading consistent with the clear intent of the statute. It is the dissent’s construction—with its addition of a prior approval requirement—that is an unreasonable narrowing of the plain language of the statute which would produce a result inconsistent with the Legislature’s intent.