# Third District Court of Appeal

## State of Florida

Opinion filed December 24, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D12-2159
Lower Tribunal No. 12-14524
_____

**Sarah Oliver,**
Appellant,

vs.

**Heather Ann Stufflebeam,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, George A. Sarduy, Judge.

Carlton Fields Jorden Burt and Cristina Alonso; Elizabeth F. Schwartz, for appellant.

Shook Hardy & Bacon and Daniel B. Rogers, for appellee.

Shannon P. Minter of National Center for Lesbian Rights (San Francisco, CA.), pro hac vice for appellant.

Before SHEPHERD, C.J., and WELLS and ROTHENBERG, JJ.

SHEPHERD, C.J.

This is an appeal by a same-sex couple from a sua sponte order entered in the court below, dismissing their petition for dissolution of their out-of-state marriage on the authority of section 741.212 of the Florida Statutes which states that same-sex marriages "are not recognized for any purpose in this state." The couple, who are respectively appellant and appellee in this court, do not challenge the validity of the statute. Rather, they come to us in agreement on a particular interpretation of the statute, and ask us to place our imprimatur on that interpretation. It is quite apparent on the face of the record in this case that there is no controversy over the point on appeal between these parties. For this reason, we affirm the dismissal of this case in that the petition for dissolution of marriage lacks a case or controversy requiring the expenditure of judicial labor.

The facts of this case are undisputed and can be succinctly stated. Sarah Oliver and Heather Stufflebeam, both female, were married under the laws of Iowa on August 17, 2009. Sometime thereafter, they moved to Florida, where on May 29, 2012, Oliver filed an uncontested petition in the family court of the Eleventh Judicial Circuit, alleging their marriage was irretrievably broken and praying for a decree of dissolution. On July 12, 2012, after a hearing on the petition, the trial court sua sponte dismissed the petition with prejudice on the authority of section 741.212 of the Florida Statutes, which prohibits the recognition of a marriage

2

between persons of the same-sex entered into in any jurisdiction "for any purpose." Oliver, in an appeal in which her appellee partner joins, challenges that decision.

**Discussion**

We begin by stating what this case is not about. This case is not about the constitutionality or merits of same-sex marriage. The parties did not raise the constitutionality of section 741.212 in the trial court or as a point on appeal before us. In fact, they urge us to reverse the decision below in order to avoid constitutional issues.[1] The statute the parties wish us to "interpret" reads as follows;

**Section 741.212. Marriages between persons of the same sex**

**(1) Marriages between persons of the same sex** entered into in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, or relationships between persons of the same sex which are treated as marriages in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, **are not recognized for any purpose in this state**.

§741.212, Fla. Stat. (1997) (emphasis added). Oliver and Stufflebeam argue that on plain reading, the statute by its terms applies only to marriages, not divorces.

---

[1] This position is legally puzzling. It would be a disingenuous court indeed that would "avoid" an issue to reach a particular result. We have no difficulty deciding a constitutional issue when properly raised. The parties did not raise the constitutionality of the statute either before this court or the trial court; thus, we do not reach any constitutional issues here. See Henderson v. Antonacci, 62 So. 2d 5, 8 (Fla. 1952) ("Courts should not voluntarily pass upon constitutional questions which are not raised by the pleadings.").

While seductive in its simplicity, their argument lacks support in either law or the rudiments of logic. Simply stated, one cannot dissolve a marriage where there is not a marriage to dissolve.

It has long been the law of this state that the granting of a divorce "concedes that a valid marriage in fact exists." Kuehmsted v. Turnwall, 138 So. 775, 777 (Fla. 1932). Furthermore, the statute pursuant to which divorces are granted in this state requires a finding that a marriage is "irretrievably broken" before a dissolution of that marriage can be granted. § 61.052(1)(a), Fla. Stat. (2013) (requiring that facts must support a "**marriage** is irretrievably broken," to grant a dissolution of marriage) (emphasis added); Nelms v. Nelms, 285 So. 2d 50, 50 (Fla. 4th DCA 1973) ("It seems clear now that failure to contest the allegation that the **marriage** is **irretrievably broken**, or a stipulation that it is so **broken**, does not suffice. **The chancellor must make that finding based upon the evidence adduced.**") (emphasis added); see also § 61.001, Fla. Stat. (2013) (stating the purpose of the statute revolves around protecting the "integrity of **marriage"** and the "amicable settlement of disputes that arise between parties **to a marriage**") (emphasis added). Where there is no valid marriage there can be no divorce. Groover v. Groover, 383 So. 2d 280, 283 (Fla. 5th DCA 1980); see also Hall v. Maal, 32 So. 3d 682, 687 (Fla. 1st DCA 2010) ("The legislature has clearly

provided that same-sex marriages are invalid, stating that they 'are not recognized for any purpose in this state.' § 741.212(1), Fla. Stat. (2002).").

It is also true in this state, with just four exceptions, that every case must involve a real controversy as to the issue or issues presented.[2] Dep't of Revenue v. Kuhnlein, 646 So. 2d 717, 720 (Fla. 1994) (citing Interlachen Estates, Inc. v. Brooks, 341 So. 2d 993 (Fla. 1976)). Where there is no case or controversy, there is no standing and the case cannot proceed. See Ferreiro v. Philadelphia Indem. Ins. Co., 928 So. 2d 374, 377 (Fla. 3d DCA 2006) ("To satisfy the requirement of standing, the plaintiff must show that a case or controversy exists between the plaintiff and the defendant").

Florida has evidenced a strong public policy against the recognition of same-sex marriages, including most recently by a super-majority vote of its citizens. See Art. I, § 27, Fla. Const. (eff. January 6, 2009);[3] Advisory Opinion to the Attorney

---

[2] The exceptions are: Art III, § 16(c), Fla. Const. (requiring the attorney general to petition the Supreme Court for a declaratory judgment determining the validity of joint resolutions of legislative apportionment); Art IV, § 1(c), Fla. Const. (authorizing the Governor to request the opinion of the Supreme Court as to the interpretation of any portion of the constitution upon any question affecting his powers and duties); Art IV, § 10, Fla. Const. (requiring the Attorney General to request the opinion of the Florida Supreme Court as to validity of citizen's initiatives circulated pursuant to Article XI, section 3); Art V, § 2, Fla. Const. (authorizing the Supreme Court and district courts of appeal to submit questions relating to military law to the federal Court of Appeals for the Armed Forces for an advisory opinion).

[3] The amendment, labeled the Florida Marriage Protection Amendment, was approved by the state's electors at a General Election held on November 4, 2008, by a margin of 61.9% to 38.1%. Just two years earlier, the people of the state

General Re Florida Marriage Protection Amendment, 926 So.2d 1229, 1235 (Fla. 2006) (stating that the proposed constitutional amendment recognizing only marriages between a man and a woman and invalidating same-sex marriages "implement[s] a public policy decision of statewide significance"). Subject to the enumerations of the Federal Constitution, the states "possess[] full power over the subject of marriage and divorce." U.S. v. Windsor, 133 S.Ct. 2675, 2691 (2013) (citing Ohio ex rel. Popovici v. Agler, 280 U.S. 379, 383–84 (1930)); see also Ryan v. Ryan, 277 So. 2d 266, 274-75 (Fla. 1973) ("[The dissolution of marriage] is the ongoing prerogative of the Legislature which also legislates the marriage in its creation"). Given Florida's exclusive right, subject only to the confines of our Federal Constitution, to define both marriage and its dissolution within this state and Florida's recognition of marriage as only between a man and a woman, same-sex couples do not have standing to seek in our courts the dissolution of a marriage that by Florida law does not exist. See Bashaway v. Cheney Bros., Inc., 987 So. 2d 93, 96 (Fla. 1st DCA 2008) (recognizing Florida's "public policy" that same-sex "legal relationship[s]" are "unattainable" in this state).

---

amended Article XI, section 5 of their constitution to require that proposed constitutional amendments be "approved by a vote of at least sixty percent of the electors voting on the measure." In the ensuing four election cycles, only 46% (13 of 28) proposed constitutional amendments presented to the electorate were approved, compared to 88% (30 of 34) during the four years prior to the adoption of the super-majority amendment to Article XI, section 5.

Oliver and Stufflebeam reply that our decision traps them into the very marriage Florida seeks to prohibit.[4] That is not so. An action for annulment of their marriage may well lie in the trial court. See generally Kuehmsted, 138 So. at 777 (defining the basic difference between and annulment and a divorce); Kantaras v. Kantaras, 884 So. 2d 155, 161 (Fla. 2d DCA 2004) (reversing the trial court's order granting a dissolution of marriage for what the court found to be a same-sex couple and remanding for an annulment as sought by the appellant); Sack v. Sack, 184 So. 2d 434, 436 (Fla. 3d DCA 1966) ("Where a marriage is validly contracted it should not be dissolved other than by divorce, or by a decree of annulment supported by allegation and proof of recognized grounds for annulment of marriage.").

It is true that in granting an annulment, Florida typically determines "the validity of a marriage in accordance with laws of the place where the marriage occurred." Johnson v. Lincoln Square Props., Inc., 571 So. 2d 541, 542 (Fla. 2d DCA 1990) (holding that Florida Statute Section 741.211 did not serve to render

---

[4] They argue, for example, that interpreting the statute contrary to their desires will lead to the absurd result of preventing bisexual people who have ended their relationship with a same-sex spouse from later entering into a valid marriage with an opposite-sex spouse, if they chose to do so; render bigamous and void *ab initio* any later marriage in jurisdictions which recognize same sex marriage; continue unwanted rights and responsibilities *inter se*, including having to share later-acquired assets with each other; and potentially harming innocent third parties who have legal ties to them, such as other family members or any children they may have.

validly entered, out-of-state common law marriages invalid).  However, "[i]t should be noted that a court need not recognize as valid a marriage which is valid in the jurisdiction where consummated where recognition would affront the public policy of the forum state."  Anderson v. Anderson, 577 So. 2d 658, 660 n.3 (Fla. 1st DCA 1991); see also James Lockhart, Cause of Action to Annul Marriage, 29 COA 431 (1992) (stating though courts of a state "normally have the power to annul a marriage performed in another state only if it was invalid where performed … [a] court has the power to annul a marriage validly contracted in another state only if the marriage violates some strong public policy of the forum state.").

We acknowledge that the nation is presently engaged in a great national conversation on the subject of same-sex marriage.  However, this is neither the time nor the place for this court to insert itself into that discussion.

We affirm dismissal of the petition filed in this case.