NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DANIELLE BRANDON-THOMAS,                )
                                        )
            Appellant,                  )
                                        )
v.                                      )      Case No. 2D14-761
                                        )
KRISTA BRANDON-THOMAS,                  )
                                        )
            Appellee,                   )
                                        )
and                                     )
                                        )
STATE OF FLORIDA,                       )
                                        )
            Intervenor/Appellee.        )
                                        )

Opinion filed April 24, 2015.

Appeal from the Circuit Court for Lee
County; John E. Duryea, Jr., Judge.

Luis E. Insignares and Brian J. Kruger of
Luis E. Insignares, P.A., Fort Myers, for
Appellant.

Michael E. Chionopoulos, Fort Myers, for
Appellee.

Pamela Jo Bondi, Attorney General, and
Allen Winsor, Solicitor General, and
Adam S. Tanenbaum, Chief Deputy Solicitor
General, Tallahassee, for
Intervenor/Appellee.

PER CURIAM.

Danielle Brandon-Thomas and Krista Brandon-Thomas[1] are a same-sex couple who were legally married in Massachusetts in October 2012. They subsequently moved to Florida. Once here, the marriage soured, and Danielle filed a petition for dissolution of marriage in October 2013.[2] Krista opposed the petition, arguing that because Florida did not recognize same-sex marriage, the court had no jurisdiction to dissolve the marriage even though it had been legally entered into in another state. She pointed to section 741.212, Florida Statutes (2013), commonly known as Florida's Defense of Marriage Act, in support of her argument.[3] The trial court concluded that it was bound by section 741.212 and dismissed the petition. Danielle now appeals that dismissal. Consistent with the requirements of the Full Faith and Credit Clause of the United States Constitution, we reverse.

The Full Faith and Credit Clause provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." Art. VI, § 1, U.S. Const. This clause requires each state to recognize

---

[1]We will refer to the parties by their first names for the sake of clarity.

[2]In her verified petition for dissolution, Danielle alleged that there was a child born of the marriage, and she requested that the court determine parental responsibility and child support issues, as well as equitable distribution. In her unverified motion to dismiss the petition, Krista alleged that she was both the birth mother and genetic mother of the child and that Danielle therefore had no standing to request shared parental responsibility or child support.

[3]Section 741.212(1) provides that "[m]arriages between persons of the same sex entered into in any jurisdiction . . . are not recognized for any purpose in this state." Section 741.212(2) prohibits "[t]he state, its agencies, and its political subdivisions" from giving effect to any same-sex marriage or claim arising from such a marriage.

judgments obtained in the courts of other states to prevent one state from selectively enforcing the laws of the others. See Trauget v. A.J. Spagnol Lumber Co., 442 So. 2d 182, 183 (Fla. 1983) (citing Morris v. Jones, 329 U.S. 545 (1947)). By requiring each state to respect the laws and actions of the other states, the Constitution "alter[ed] the status of the several states as independent foreign sovereignties, each free to ignore the obligations created under the laws or by the judicial proceedings of the others, and [made] them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin." Milwaukee Cnty. v. M.E. White Co., 296 U.S. 268, 277 (1935). And while neither Florida nor any other state is required to give full faith and credit to another state's laws and judgments that conflict with that state's legitimate public policy, see, e.g., Nevada v. Hall, 440 U.S. 410, 422 (1979) (holding that the Full Faith and Credit Clause "does not require a State to apply another State's law in violation of its own legitimate public policy"); Johnson v. Lincoln Square Props., Inc., 571 So. 2d 541, 542 (Fla. 2d DCA 1990) ("Florida law does not have to give full faith and credit to another state's law when it is repugnant to the interest of Florida."), the Full Faith and Credit Clause "ought not lightly to be set aside." Milwaukee Cnty., 296 U.S. at 277.

Thus, there are circumstances in which a state might seek to give full faith and credit to some out-of-state laws and judgments but not others, based on public policy considerations. But a state may not do so in a manner that runs afoul of the Equal Protection Clause of the United States Constitution.[4]  Under the Equal Protection

---

[4]Art. XIV, § 1, U.S. Const.

Clause, persons who are similarly situated may not be classified and treated differently because "the Constitution 'neither knows nor tolerates classes among citizens.' " Romer v. Evans, 517 U.S. 620, 623 (1996) (quoting Plessy v. Ferguson, 163 U.S. 537, 559 (1896) (Harlan, J., dissenting)).  Further, the substantive component of the Due Process Clause[5] also acts to limit state authority to enact measures that impinge on fundamental rights, even if enacted with appropriate procedural safeguards.  Brenner v. Scott, 999 F. Supp. 2d 1278, 1287 (N.D. Fla. 2014).

Under the Due Process Clause, we apply strict scrutiny in reviewing governmental action that infringes upon fundamental rights.  See Brenner, 999 F. Supp. 2d at 1287.  Thus, the law will survive constitutional challenge only if it is "narrowly tailored to serve a compelling state interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (quoting Reno v. Flores, 507 U.S. 292, 302 (1993)); see State v. J.P., 907 So. 2d 1101, 1110 (Fla. 2004).  Under the Equal Protection Clause, we also apply strict scrutiny in reviewing governmental action that infringes upon fundamental rights or discriminates based on suspect classifications.  See id.

If the right is not fundamental, we subject the alleged constitutional infringement to a rational basis review.  See id.  Under the rational basis standard, "a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." Romer, 517 U.S. at 632.  Under both due process and equal protection analysis, the first step is to determine whether the asserted right is fundamental.  Brenner, 999 F. Supp. 2d at 1287.

---

[5]Art. XIV, § 1, U.S. Const.

Under Florida law, sexual orientation is not a protected class entitled to strict-scrutiny analysis.  D.M.T. v. T.M.H., 129 So. 3d 320, 341-42 (Fla. 2013).  It follows that the right of a same-sex couple to seek a dissolution of marriage in Florida, when they were validly married in another state but now live in Florida, is not a fundamental right for federal constitutional purposes.  Thus, Florida bears the burden of presenting only a rational basis for its classification.  See United States v. Windsor, 133 S. Ct. 2675, 2716-17 (2013).[6]  To meet this burden, the state must only have a legitimate purpose for the law or statute at issue.  FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993).  Said another way, such a classification will pass constitutional muster "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  Id.

In applying this standard, we note that the State of Florida regularly recognizes heterosexual marriages validly performed in other jurisdictions as legitimate, and it entertains dissolution proceedings filed by heterosexual couples who were legally married in all other states, as well as in other countries.  Florida also recognizes common law marriages entered into in states that accept common law marriages, even though Florida itself does not recognize common law marriages contracted for in Florida after 1968.  See Smith v. Anderson, 821 So. 2d 323, 325 (Fla. 2d DCA 2002).

Both Krista and the Attorney General take the position that Florida need not afford full faith and credit to legal out-of-state same-sex marriages because they violate Florida's public policy as set forth in section 741.212 and article I, section 27 of

---

[6]We also note that intermediate equal-protection scrutiny may apply in certain circumstances.  But that analysis has no impact here.  See Brenner, 999 F. Supp. 2d at 1287.

the Florida Constitution.[7] They contend that a Florida court cannot dissolve such a marriage because to do so would effectively provide recognition to the marriage, contrary to Florida's public policy.

Neither Krista nor the Attorney General specifically address what legitimate purpose might be the basis for precluding a Florida court from exercising jurisdiction to dissolve a same-sex marriage legally entered into outside of Florida. Krista refers to "a societal inducement for opposite-sex couples to marry, thus decreasing the percentage of children accidentally conceived outside of a stable, long-term relationship." But this argument seems to ignore the biological fact that same-sex couples do not contribute to the problem of children "accidentally conceived" outside of a stable, long-term relationship because, as a matter of pure biology, same-sex couples simply cannot "accidentally conceive" children. Moreover, as the Seventh Circuit Court of Appeals recently pointed out, "if channeling procreative sex into marriage were the only reason [to] recognize[] marriage, the state would not allow an infertile person to marry." Baskin v. Bogan, 766 F.3d 648, 661 (7th Cir. 2014).

The Attorney General identifies a different legitimate purpose, arguing that Florida's refusal to recognize same-sex marriage properly furthers Florida's long-standing history of defining marriage as being between a man and a woman. However, refusing to allow Florida's courts to exercise jurisdiction to dissolve same-sex marriages will not further this stated public policy in any manner. In fact, refusing to allow the

---

[7]Article I, section 27 of the Florida Constitution states: "Inasmuch as marriage is the legal union of only one man and one woman as husband and wife, no other legal union that is treated as marriage or the substantial equivalent thereof shall be valid or recognized."

dissolution of these marriages seemingly contravenes Florida's public policy. If the policy is to prevent, eliminate, discourage, or otherwise preclude same-sex marriage in Florida, permitting the courts to dissolve same-sex marriages that have been previously entered into in other states would arguably further that policy by reducing the number of same-sex married couples in Florida. More to the point, the Attorney General also does not address what public purpose might be served by precluding the dissolution of marriage of same-sex couples who were lawfully married outside of Florida but who now legally reside in Florida.

The practical impact of the trial court's order is that a validly married couple, albeit of the same sex, cannot access a Florida court to undo their marriage. The couple's financial affairs remain intertwined, and their joint assets, if any, are not easily transferred. The trial court's order impedes the flow of assets and capital. Particularly significant, the welfare and stability of a child parented by this couple remains in limbo. The fact that a child is involved implicates Florida's strong public policy to protect children by determining custody matters in accordance with the best interests of the child. Our decision today protects the parties' rights of access to the court for dissolution of their marriage and an opportunity to be heard regarding their claimed rights to their assets and the child. See Boddie v. Connecticut, 401 U.S. 371, 376 (1971).

In summary, neither Krista nor the Attorney General have suggested what legitimate government interest would be served by precluding a Florida court from exercising jurisdiction over this dissolution of marriage proceeding. Stated differently, they have not established that section 741.212 or article I, section 27 of the Florida

Constitution bear any rational relationship toward furthering any legitimate public policy that should preclude this dissolution of marriage case from going forward. Accordingly, we reverse the dismissal of Danielle's petition for dissolution of marriage and remand for the trial court to address it on the merits.[8]

Reversed and remanded for further proceedings.


VILLANTI, C.J., Concurs.
CASANUEVA, J., Concurs with opinion.
LaROSE, J., Concurs with opinion.


CASANUEVA, Judge, Concurring.

I fully concur with the majority opinion and write to address two points. First, I believe that Florida would also be required to dissolve the parties' marriage under an access to the courts analysis. Second, not only has there been no legitimate purpose provided that would permit Florida not to give full faith and credit to the marriage, because this case involves a minor child, it implicates another long-standing Florida public policy which requires courts to consider the best interests of the child.

I. Access to Courts

---

[8]We note that in Oliver v. Stufflebeam, 155 So. 3d 395, 399 (Fla. 3d DCA 2014), the Third District affirmed the dismissal of a petition for dissolution of an out-of-state same-sex marriage. However, in that case, both parties were in agreement as to the allegedly proper interpretation of section 741.212, and they did "not challenge the validity of the statute." Id. at 396. The Third District found that there was no controversy between the parties, and it affirmed the dismissal on that basis. Id. Because this case does present a controversy between the parties, this case is both procedurally and factually distinguishable from Oliver. Therefore, we see no need to certify conflict.

- 8 -

Section 61.043, Florida Statutes (2013), expressly places subject matter jurisdiction to adjudicate divorce proceedings with the trial courts: "[a] proceeding for dissolution of marriage or a proceeding under s. 61.09 shall be commenced by filing in the circuit court a petition . . . ." Filing a petition for dissolution is the sole means in Florida for obtaining a divorce. See § 61.031 ("No dissolution of marriage is from bed and board, but is from bonds of matrimony."). It is not disputed in this case that the parties are lawfully married.

Encompassed within a trial court's ability to dissolve a marriage is its ability to determine several legal rights and responsibilities of the parties. In dissolution proceedings, a trial court has the authority to determine alimony, equitable distribution of marital assets and liabilities, child custody and visitation, and child support. See Wilcox v. Munoz, 35 So. 3d 136, 140 (Fla. 2d DCA 2010) ("Child support 'is not a requirement imposed by one parent on the other; rather it is a dual obligation imposed on the parents by the State.' " (quoting Serio v. Serio, 830 So. 2d 278, 280 (Fla. 2d DCA 2002))). Thus, in denying the parties a dissolution of their marriage, the trial court also denied the parties and their child the opportunity to have the above rights determined.

In Boddie, 401 U.S. at 374, the Supreme Court held that due process prohibits "a State from denying, solely because of inability to pay, access to its courts to individuals who seek judicial dissolution of their marriages." The Court reasoned as follows:

> Without a prior judicial imprimatur, individuals may freely enter into and rescind commercial contracts, for example, but we are unaware of any jurisdiction where private citizens may covenant for or dissolve marriages without state approval. Even where all substantive requirements are concededly met, we know of no instance where two

- 9 -

consenting adults may divorce and mutually liberate themselves from the constraints of legal obligations that go with marriage, and more fundamentally the prohibition against remarriage, without invoking the State's judicial machinery.

Thus, although they assert here due process rights as would-be plaintiffs, we think appellants' plight, because resort to the state courts is the only avenue to dissolution of their marriages, is akin to that of defendants faced with exclusion from the only forum effectively empowered to settle their disputes.

Id. at 376.  The Court concluded that a

State's refusal to admit these appellants to its courts, the sole means in Connecticut for obtaining a divorce, must be regarded as the equivalent of denying them an opportunity to be heard upon their claimed right to a dissolution of their marriages, and, in the absence of a sufficient countervailing justification for the State's action, a denial of due process.

Id. at 380-81.

If same-sex couples are unable to seek a dissolution of marriage in Florida, their situation is similar to the couples in Boddie because they cannot obtain a divorce through any other means.  As noted above, judicial action is required to obtain a divorce, and the trial court's refusal to accept the petition deprived the parties of their right to access the courts.

"[D]ue process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." Id. at 377.  The State has failed to present an argument that denying a party the right to seek a divorce serves a state interest of overriding significance, nor do I believe such an argument can be validly made in a case involving a minor child.

- 10 -

I would note that allowing same-sex couples to obtain a divorce does not run afoul of section 741.212, Florida's Defense of Marriage Act (DOMA), which proscribes the *marriage* of same-sex couples.[9]  The Supreme Court of Wyoming has observed:

> [R]ecognizing a valid foreign same-sex marriage for the limited purpose of entertaining a divorce proceeding does not lessen the law or policy in Wyoming against allowing the creation of same-sex marriages.  A divorce proceeding does not involve recognition of a marriage as an ongoing relationship.  Indeed, accepting that a valid marriage exists plays no role except as a condition precedent to granting a divorce.  After the condition precedent is met, the laws regarding divorce apply.  Laws regarding marriage play no role.

Christiansen v. Christiansen, 253 P.3d 153, 156 (Wyo. 2011).

As in Christiansen, the parties here do not seek to live in Florida as a married couple and they do not seek to enforce a right incident to the status of being married.  See id. at 156.  They are seeking the opposite--to dissolve a legal Massachusetts relationship.  "Thus, the policy of this state against the creation of same-sex marriages is not violated."  Id. at 157.  Accordingly, the State has no countervailing state interest to deprive the parties of their right to access the courts.

## II.  Full Faith and Credit

I agree with the majority opinion that the Full Faith and Credit Clause requires Florida to recognize the parties' marriage but would also note that, because this case involves a minor child, another long-standing Florida public policy is implicated

---

[9]As noted in the majority opinion, if the policy of Florida is to disfavor same-sex marriage, then allowing the divorce of same-sex couples would not be contrary to such policy.

- 11 -

which requires courts to consider the best interests of the child. Our legislature has often enacted laws to protect our children so as to insure that the best interests of the child are adhered to, and our judiciary too has long subscribed to that precept. See, e.g., § 61.13(2)(c) ("The court shall determine all matters relating to parenting and time-sharing of each minor child of the parties in accordance with the best interests of the child and in accordance with the Uniform Child Custody Jurisdiction and Enforcement Act . . . ."); Parker v. Parker, 950 So. 2d 388, 393 (Fla. 2007) ("We find that the balance of policy considerations favors protecting the best interests of the child over protecting the interests of one parent defrauded by the other parent in the midst of a divorce proceeding."); Morris v. Morris, 932 So. 2d 1007, 1008 (Fla. 2006) ("Florida public policy and law is unequivocal in its declaration that adult parents cannot barter away the best interests of their children or exclude the courts from reviewing terms or conditions of custody, visitation, or support.").

In this case, any public policy based on DOMA is further overridden by this State's strong policy favoring the best interests of a child. As discussed above, dissolution proceedings often determine not only alimony and equitable distribution of marital assets and liabilities, but also resolve matters relating to minor children, including child custody, visitation, and support, the latter being an obligation due to the child. To enforce the policy advocated to the trial court in this case is to do harm to the child and completely fails to consider the child's best interest.

Accordingly, I conclude that where, as here, a child's best interest is at issue in a dissolution of a same-sex marriage, Florida's DOMA cannot be interposed to prohibit a judicial resolution because it does not constitute a valid exception to the Due

Process Clause or the Full Faith and Credit Clause. Therefore, I conclude that the trial court must proceed with a judicial determination of the issues presented, including those pertaining to the minor child.

For the reasons expressed, I concur.

LaROSE, Judge, Concurs with opinion.

I concur in the court's opinion to the extent it concludes that the Full Faith and Credit Clause of the United States Constitution required the trial court to exercise jurisdiction over Danielle's petition for dissolution of marriage. I write separately to explain my view that before any full faith and credit analysis occurs, we need to explain why Florida's ban on recognizing same-sex marriage does not erect an unscalable barrier to the trial court's exercise of jurisdiction. Indeed, a proper characterization of the claimed right at issue in this case demonstrates that sections 741.212 and 741.04 have minimal application to a case involving the divorce of a same-sex couple validly married in another state.

As the court's opinion recognizes, the current state of the law compels the trial court to entertain Danielle's petition for dissolution of marriage. Some thirty-seven states and the District of Columbia now allow same-sex marriage. See Robert Barnes, Clarence Thomas Faults Supreme Court for Refusing to Block Gay Marriage in Alabama, Washington Post (Feb. 9, 2015, 8:33PM), http://www.washingtonpost.com/politics/courts_law/supreme-court-refuses-to-hold-back-alabama-same-sex-marriages/2015/02/09/203d8494-b06b-11e4-854b-a38d13486ba1_story.html. In most

of those jurisdictions, same-sex marriage is the product of judicial decisions purporting to enforce the Due Process and Equal Protection Clauses of the U.S. Constitution. See Austin R. Nimocks, History and Recent Developments in Same-Sex Marriage Litigation, 15 Engage: J. Federalist Soc'y Prac. Groups 19, 20 (2014).

Closest to home, Brenner toppled Florida's majoritarian efforts to define marriage as being between one man and one woman. Brenner v. Scott, 999 F. Supp. 2d 1278 (N.D. Fla. 2014), stay pending appeal denied, Armstrong v. Brenner, 135 S. Ct. 890 (Dec. 19, 2014). Brenner tells us that article I, section 27, of the Florida Constitution and related statutes, sections 741.212 and 741.04(1) ("No county court judge or clerk of the circuit court in this state shall issue a license for the marriage of any person . . . unless one party is a male and the other party is a female."), do not pass federal constitutional muster. Id. at 1290. As a result, since January 6, 2015, Florida has not enforced its ban on same-sex marriage. Seemingly, the right to wed necessarily encompasses the right of a same-sex couple to divorce. But, divorce is different from marriage. Consequently, this case is not about same-sex marriage at all.

The practical impact of the trial court's order is that a validly married couple, albeit of the same sex, cannot access a Florida court to undo their marriage. The couple's financial affairs remain intertwined, and their assets, if any, are not easily transferred. The trial court's order impedes the flow of assets and capital. Particularly significant, the welfare and stability of a child parented by this couple remain in limbo. These financial and custody issues are markedly different from whether a same-sex couple is entitled to wed in Florida.

We cannot ignore the mobility of American society. <u>See</u> Elisabeth Oppenheimer, <u>No Exit: The Problem of Same-Sex Divorce</u>, 90 N.C. L. Rev. 73, 77 n.16 (2011). We should expect that many same-sex couples validly married in other states make and will make Florida their home. Although divorce does not inevitably follow marriage, we should anticipate that many married same-sex couples, unfortunately, will need to dissolve their unions.[10] It is hard to fathom that the legislators who passed sections 741.212 and 741.04(1) envisioned a scenario where assets remain unmarketable for lack of an equitable distribution. Nor could they have reasonably anticipated a system that disregards the best interests of a child raised and nurtured in a same-sex home. There can be no question but that Florida has a compelling interest in protecting children subject to its jurisdiction. <u>See</u> <u>Kirton v. Fields</u>, 997 So. 2d 349, 352 (Fla. 2008).

How then, if at all, can a Florida trial court address the pressing issues of child custody, finances, and property distribution in a manner consistent with, what was until <u>Brenner</u>, a ban on recognizing or allowing same-sex marriage in Florida? Properly defining the right at issue is essential because it necessarily informs the constitutional

---

[10]The couple before us was married in Massachusetts. Returning to that Commonwealth for a divorce is simply not workable. Massachusetts imposes a one-year residency requirement on a couple seeking divorce; Massachusetts does not allow a divorce if it appears the plaintiff moved to Massachusetts for that purpose. <u>See</u> M.G.L.A. 208 § 5 (allowing divorce after one-year residence or if plaintiff lives in commonwealth at time of filing and cause occurred within the commonwealth, "<u>unless</u> it appears that the plaintiff has removed into this commonwealth for the purpose of obtaining a divorce"); <u>see also</u> Mass. Gen. Laws Ann. ch. 208 § 4 (2014) (allowing divorce for a cause that occurred in another jurisdiction only if parties previously lived together as spouses in the Commonwealth and one of them lived there when the cause occurred), § 1B (imposing additional six-month waiting period after filing before court may grant divorce). Even if Danielle could move back to Massachusetts and obtain a divorce, uprooting a settled existence in Florida does not seem practicable.

- 15 -

analysis that we must apply.  See State v. J.P., 907 So. 2d 1101, 1120 (Fla. 2004) (Cantero, J., dissenting).  Courts that have invalidated same-sex marriage bans on constitutional grounds consistently have held that same-sex couples enjoy a fundamental right to marry.  See Ronald Turner, Same-Sex Marriage and Due Process Traditionalism, 49 U. Rich. L. Rev. 579 (2015).  But that is not the issue squarely before us.

This case is not about same-sex marriage.  Danielle claims a narrower right: the right of a same-sex couple, validly married in another state and now living in Florida, to seek a dissolution of marriage in Florida.  A heterosexual couple under similar circumstance could easily invoke a Florida trial court's jurisdiction.  The more precise definition of the right makes it easier to apply the constitutional principles of equal protection and due process.  With such precision, we need not wade into the broader legal and societal issue of the right of same-sex individuals to marry.

Danielle is not seeking to marry.  Instead, she wants the help of a Florida trial court to return her to a single status.  She seeks to adjust the parties' financial and property relationships.  Importantly, she seeks some judicial direction concerning the critical matter of child custody.  Dissolving the marital bond is fundamentally different than establishing that union.  Danielle is not asking a Florida trial court to establish a marital bond.  Rather, she seeks disengagement from a broken relationship.  Upon dissolution of marriage, the parties will each be single.  Apart from the mandates of any final judgment, any state or federal obligations or benefits attendant to marriage presumably will cease.  Like those federal court decisions recognizing same-sex marriages, the case before us, although involving a same-sex divorce, must be

analyzed principally for compliance with the Equal Protection and Due Process Clauses of the federal constitution to the extent that the trial court's order denied relief to Danielle.

We apply a well-settled general framework for such analysis. See Brenner, 999 F. Supp. 2d at 1287. The substantive component of the Due Process Clause checks state authority to enact untenable measures, even if enacted with appropriate procedural safeguards. Id. Substantive due process protects fundamental rights, those "rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition' . . . and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.' " Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997) (quoting Moore v. East Cleveland, 431 U.S. 494, 503 (1997) (plurality opinion); Palko v. Connecticut, 302 U.S. 319, 325, 326 (1937)).

As noted above, Brenner and a host of other cases validating same-sex marriages have declared marriage to be a fundamental right recognized by the federal constitution. See Brenner, 999 F. Supp. 2d at 1281, 1289; Turner, supra. Unquestionably, in the trial court's view, article I, section 27, of the Florida Constitution and section 741.212 classify same-sex couples differently than heterosexual couples for purposes of dissolution of marriage. Here, importantly, is where the matter of proper definition of the right sought plays a leading role.

As the court acknowledges, under Florida law, sexual orientation is not a protected class entitled to strict-scrutiny analysis. D.M.T. v. T.M.H., 129 So. 3d 320, 341-42 (Fla. 2013). If the right at issue, then, is the right of a same-sex couple, validly married in another state and now living in Florida, to seek a dissolution of marriage in

Florida, I am hard pressed to classify this right as fundamental for federal constitutional purposes. I am aware of no case holding that the right, as I have defined it, is fundamental. Thus, Florida bears the burden of presenting only a rational basis for its classification. See United States v. Windsor, 133 S. Ct. 2675, 2717 (2013).

The State falls short. The State fails to define properly the right at issue. The State views this case through an overly broad lens. For the State, this is a same-sex marriage case. It is not. Nonetheless, the State unnecessarily burdens itself with trying to justify a ban of same-sex marriage. Without explication, the State cites us to numerous cases where the government sought to explain the rational basis for banning same-sex marriage as necessary to promote procreation and to have children raised in an optimal family setting. See Robicheaux v. Caldwell, 2 F. Supp. 3d 910, 917 (E.D. La. 2014); Sevcik v. Sandoval, 911 F. Supp. 2d 996, 1014-17 (D. Nev. 2012), reversed, Latta v. Otter, 771 F.3d 456 (9th Cir. 2014); Jackson v. Abercrombie, 884 F. Supp. 2d 1065, 1116-18 (D. Haw. 2012), vacated, 585 Fed. Appx. 413 (9th Cir. 2014); Standhardt v. Superior Ct., 77 P.3d 451, 461 (Ariz. App. 2003); Jones v. Hallahan, 501 S.W.2d 588 (Ky. 1973); Conaway v. Deane, 932 A.2d 571, 630-31 (Md. 2007); Baker v. Nelson, 191 N.W.2d 185, 186-87 (Minn. 1971); In re Marriage of J.B. & H.B., 326 S.W.3d 654, 677-78 (Tex. App. 2010); Andersen v. King Cnty., 138 P.3d 963, 969, 982-84 (Wash. 2006); Singer v. Hara, 522 P.2d 1187, 1191 (Wash. App. 1974); cf. Dean v. Dist. of Columbia, 653 A.2d 307 (D.C. 1995) (discussing whether homosexual orientation of parents will influence children's sexual orientation). Seemingly, the State insists that procreation and traditional family units undergird article I, section 27 and sections 741.212 and

741.04(1). But, in the context of recognizing same-sex marriages, courts have rejected these purported interests under the lenient rational basis test.

The State's rational basis explanation fails for another, more simple, reason. Even if Florida's purported interest in procreation and having children raised in a heterosexual household were rational reasons to ban same-sex marriage, see House of Representatives Committee on Governmental Operations Final Bill Research & Economic Impact Statement on H.B. 147, at § II(B) (Fla. 1997), the State tells us nothing about why or how prohibiting a validly married same-sex couple from seeking a divorce in Florida advances either of these interests. Any claimed rational basis appears untethered to the right at issue.

The State has not articulated how prohibiting a trial court from dissolving a same-sex marriage, validly entered into in another state, will promote a rise in procreation. Nor does the State explain how denying this couple a divorce will optimize what it sees as an ideal environment for raising children. Indeed, in the context of a marriage dissolution, the trial court will be in an ideal situation to protect the best interest of the child parented by this couple.

I do not lightly discount the State's reason for enacting its laws. See Anderson v. Bd. of Pub. Instruction, 136 So. 334, 337 (Fla. 1931). A court should defer to the State when it has provided a basis for its statutory and constitutional classifications. Id. That deference, of course, presupposes that the State has a rational basis for its position. On the record before us, the State has failed to satisfy its burden.