PER CURIAM.
Danielle Brandon-Thomas and Krista Brandon-Thomas[1] are a same-sex • couple who were legally married in Massachusetts in October 2012. They subsequently moved to Florida. Once here, the marriage soured, and Danielle filed a petition for dissolution of marriage in October 2013.[2] ■ Krista opposed the petition, arguing that because Florida did not recognize same-sex marriage, the court had no jurisdiction to dissolve the marriage even though it had been legally entered into in another state. She pointed to section 741.212, Florida Statutes (2013), commonly known as Florida’s Defense of Marriage *646 Act, in support of her argument.[3] The trial court concluded that it was bound by section 741.212 and dismissed the petition. Danielle now appeals that dismissal. Consistent with the requirements of the Full Faith and Credit Clause of the United States Constitution, we reverse.
The Full Faith and Credit Clause provides that “Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.” Art. VI, § 1, U.S. Const. This clause requires each state to recognize judgments obtained in the courts of other states to prevent one state from selectively enforcing the laws of the others. See Trauger v. A.J. Spagnol Lumber Co., 442 So.2d 182, 183 (Fla.1983) (citing Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1947)). By requiring each state to respect the laws and actions of-the other states, the Constitution “alter[ed] the status of the several states as independent foreign sovereign-ties, each free to ignore the obligations created under the laws or by the judicial proceedings of the others, and [made] them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin.”' Milwaukee Cnty. v. M.E. White Co., 296 U.S. 268, 277, 56 S.Ct. 229, 80 L.Ed. 220 (1935). And while neither Florida nor any other state is required to give full faith and credit to another state’s laws and judgments that conflict with that state’s legitimate public policy, see, e.g., Nevada v. Hall, 440 U.S. 410, 422, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979) (holding that the Full Faith and Credit Clause “does not require a State to apply another State’s law in violation of its own legitimate public policy”); Johnson v. Lincoln Square Props., Inc., 571 So.2d 541, 542 (Fla. 2d DCA 1990) (“Florida law does not have to give full faith and credit to another state’s law when it is repugnant to the interest of Florida.”), the Full Faith and Credit Clause “ought not lightly to be set aside.” Milwaukee Cnty., 296 U.S. at 277, 56 S.Ct. 229.
Thus, there are circumstances in which a state might seek, to give full faith and credit to some out-of-state laws and judgments but not others, based on public policy considerations. But a state may not do so in a manner that runs afoul of the Equal Protection Clause of the United States Constitution.[4] Under the Equal Protection Clause, persons who are similarly situated may not be classified and treated differently because “the Constitution ‘neither knows nor tolerates classes among citizens.’ ” Romer v. Evans, 517 U.S. 620, 623, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (quoting Plessy v. Ferguson, 163 U.S. 537, 559, 16 S.Ct. 1138, 41 L.Ed. 256 (1896) (Harlan, J., dissenting)). Further, the substantive component of the Due Process Clause[5] also acts to limit state authority to enact measures that impinge on fundamental rights, even if enacted with appropriate procedural safeguards. Brenner v. Scott, 999 F.Supp.2d 1278, 1287 (N.D.Fla.2014).
Under the Due Process Clause, we apply strict scrutiny in reviewing governmental action that infringes upon fun- ■ damental rights. See Brenner, 999 *647 F.Supp.2d at 1287. Thus, the law will survive constitutional challenge only if it is “narrowly tailored to serve a compelling state interest.” Washington v. Glucksberg, 521 U.S. 702, 721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (quoting Reno v. Flores, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)); see State v. J.P., 907 So.2d 1101, 1110 (Fla.2004). Under the Equal Protection Clause, we also apply strict scrutiny in reviewing governmental action that infringes upon fundamental rights or discriminates based on suspect classifications. See id.
If the right is not fundamental, we subject the alleged constitutional infringement to a rational basis review. See id. Under the rational basis standard, “a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous.” Romer, 517 U.S. at 632, 116 S.Ct. 1620. Under both due process and equal protection analysis, the first step is to determine whether the asserted right is fundamental. Brenner, 999 F.Supp.2d at 1287.
Under Florida law, sexual-orientation is not a protected class entitled to strict-serutiny analysis. D.M.T. v. T.M.H., 129 So.3d 320, 341-42 (Fla.2013). It follows that the right of a same-sex couple to seek a dissolution of marriage in Florida, when they were validly married in another state but now live in Florida, is not a fundamental right for federal constitutional purposes. Thus, Florida bears the burden of presenting only a rational basis for its classification. See United States v. Windsor, — U.S. -, 133 S.Ct. 2675, 2716-17, 186 L.Ed.2d 808 (2013).[6] To meet this burden, the state must only have a legitimate purpose for the law or statute at issue. FCC v. Beach Commc’ns, Inc., 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). Said another way, such a classification will pass constitutional muster “if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.” Id.
In applying this standard, we note that the State of Florida regularly recognizes heterosexual marriages validly performed in other jurisdictions as legitimate, and it entertains dissolution proceedings filed by heterosexual couples who were legally married in all other states, as well as in other countries. Florida also recognizes common law marriages entered into in states that accept common law marriages, even though Florida itself does not recognize common law marriages contracted for in Florida after 1968. See Smith v. Anderson, 821 So.2d 323, 325 (Fla. 2d DCA 2002).
Both Krista and the Attorney General take the position that Florida need not afford full faith and credit to legal out-of-state same-sex marriages because they violate Florida’s public policy as set forth in section 741.212 and article I, section 27 of the Florida Constitution.[7]' They contend that a Florida court cannot dissolve such a marriage because to do so would effectively provide recognition to the marriage, contrary to Florida’s public policy.
*648 Neither Krista nor the Attorney General specifically address what legitimate purpose might be the basis for precluding a Florida court from exercising jurisdiction to dissolve a same-sex marriage legally entered into outside of Florida. Krista refers to “a societal inducement for opposite-sex couples to marry, thus decreasing the percentage of children accidentally conceived outside of a stable, long-term relationship.” But this argument seems to ignore the biological fact that same-sex couples do not contribute to the problem of children “accidentally conceived” outside of a stable, long-term relationship because, as a matter of pure biology, same-sex couples simply cannot “accidentally conceive” children. Moreover,' as the Seventh Circuit Court of Appeals recently pointed out, “if channeling procreative sex into marriage were the only reason [to] recognize[ ] marriage, the state would not allow an infertile person, to marry.” Baskin v. Bogan, 766 F.3d 648, 661 (7th Cir.2014).
The Attorney General identifies a different legitimate purpose, arguing that Florida’s refusal to recognize same-sex marriage properly furthers Florida’s longstanding history of defining marriage as being between a man and a woman. However, refusing to allow Florida’s courts to exercise jurisdiction to dissolve same-sex marriages will not further this stated public policy in any manner. In fact, refusing to allow the dissolution of these marriages seemingly contravenes Florida’s public policy. If the policy is to prevent, eliminate, discourage, or otherwise preclude same-sex marriage in Florida, permitting the courts to dissolve same-sex marriages that have been previously entered into in other states would arguably further that policy by reducing the number of same-sex married couples in Florida. More to the point, the Attorney General also does not address what public purpose might be served by precluding the dissolution of marriage of same-sex couples who were lawfully married outside of Florida but who now legally reside in Florida.
The practical impact of the trial court’s order is that a validly married couple, albeit of the same sex, cannot access a Florida court to undo their marriage. The couple’s financial affairs remain intertwined, and their joint assets, if any, are not easily transferred. The trial court’s order impedes the flow of assets and capital. Particularly significant, the welfare and stability of a child parented by this couple remains in limbo. The fact that a child is involved implicates Florida’s strong public policy to protect children by determining custody matters in accordance with the best interests of the child. Our decision today protects the parties’ rights of access to the court for dissolution of their marriage and an opportunity to be heard regarding their claimed rights to their assets and the child. See Boddie v. Connecticut, 401 U.S. 371, 376, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).
In summary, neither Krista nor the Attorney General have suggested what legitimate government interest would be served by precluding a Florida court from exercising jurisdiction over this dissolution of marriage proceeding. Stated differently, they have not established that section 741.212 or article I, section 27 of the Florida Constitution bear any rational relationship toward furthering any legitimate public policy that should preclude this dissolution of marriage case from going forward. Accordingly, we reverse the dismissal of Danielle’s petition for dissolution of marriage and remand for the trial court to address it on the merits.[8]
*649 Reversed and remanded for further proceedings.
VILLANTI, C.J., Concurs.
CASANUEVA, J., Concurs with opinion.
LaROSE, J., Concurs with opinion.

. We will refer to the parties by their first names for the sake of clarity.

. In her verified petition for dissolution, Danielle alleged that there was a child born of the marriage, and she requested that the court determine parental responsibility and child support issues, as well as equitable distribution. In her unverified motion to dismiss the petition, Krista alleged that she was both the birth mother and genetic mother of the child and that Danielle therefore had no standing to request shared parental responsibility or child support.

.Section 741.212(1) provides that ”[m]ar-riages between persons of the same sex entered, into in any jurisdiction .... are not recognized for any purpose in this state.” Section 741.212(2) prohibits "[t]he state, its' agencies, and its political subdivisions” from giving effect to any same-sex marriage or claim arising from such a marriage.

. Art. XIV, § 1, U.S. Const.

. Art. XIV, § 1, U.S. Const.

. We also note that intermediate equal-protection scrutiny may apply in certain circumstances. But that analysis has no impact here. See Brenner, 999 F.Supp.2d at 1287.

. Article I, section 27 of the Florida Constitution states: "Inasmuch as marriage is the legal union of only one man and one woman as husband and wife, no other' legal union that is treated as marriage or the substantial equivalent thereof shall be valid or recognized."

. We note that in Oliver v. Stufflebeam, 155 So.3d 395, 399 (Fla. 3d DCA 2014), the Third *649 District affirmed the dismissal of a petition for dissolution of an out-of-state same-sex' marriage. However, in that case, both parties were in agreement as to the allegedly proper interpretation of section 741.212, and they did "not challenge the validity of the statute.” Id. at 396. The Third District found that there was no controversy between the parties, and it affirmed the dismissal on that basis. Id. Because this case does present a controversy between the parties, this case is both procedurally and factually distinguishable from Oliver. Therefore, we see no need to certify conflict.